THUM et al. v. ANDREWS et al.

(Circuit Court, D. Massachusetts. December 28, 1892.)

No. 2,893.

1. PATENTS FOR INVENTIONS—INVENTION—FLY PAPER.
    Letters patent No. 278,294, issued May 22, 1883, to Otto Thum for a sheet of fly paper partially covered with a sticky composition, the latter being surrounded by a margin of less adhesive material, so as to prevent it from spreading over the edges, and the third claim of letters patent No. 305,118, issued September 16, 1884, to the same person, covering the fly paper with adhesive faces placed together, so as to be packed without folding, and adapted to be separated when ready for use, are not invalid for want of invention because plasters for the body had long been made with an adhesive margin surrounding the less sticky substance of the medicinal compound.

2. SAME—PRIOR USE AND SALE—EVIDENCE.
    A patent cannot be invalidated because of prior use and sale on the evidence of witnesses who, after the lapse of over 10 years, testify loosely and entirely from recollection, and do not produce samples of the articles sold, and when their statements are contradicted by the alleged purchasers thereof.

In Equity. Bill by Otto Thum and others against John A. Andrews and others for infringement of patents. Decree for complainants.

Thomas J. Johnston and Chauncey Smith, for complainants.
John McC. Perkins, for defendants.

CARPENTER, District Judge. This is a bill in equity to enjoin an alleged infringement of letters patent No. 278,294, issued May 22, 1883, to Otto Thum, and of the third claim of letters patent No. 305,118, issued September 16, 1884, to said Otto Thum. The claims alleged to be infringed are as follows, respectively:

"A sheet of fly paper partially covered with a sticky composition, the latter being surrounded with a band or margin of less, but still slightly adhesive, material."

"(3) As a new article of manufacture, the fly paper with adhesive faces placed together, so as to be packed without folding, and adapted to be separated when ready for use, substantially as described."

The subject of this invention is a sheet of paper covered with a sticky and semifluid substance, in which the fly, being entangled by his feet, is hopelessly detained, and finally dies. The objection to the use of this paper, as it was first prepared, was that the sticky substance flowed over the edge of the paper and injured surrounding articles, and also, when packed for transportation or sale, caused the sheets to adhere to each other so that they could not be easily and conveniently separated for use. The device adopted by this inventor was to surround the sticky substance by a margin of comparatively firm and only slightly adhesive substance,—a resinous compound being preferred. As thus prepared, two sheets may be placed together with the sticky surfaces in apposition, and the adhesive margins of the two will together form a dam which will hold in place the sticky substance, which is the effective part of the device. This appears to be a useful invention, as the evidence discloses that paper so made is largely sold, and has to a great extent displaced the less convenient article formerly in use.

The respondents do not deny that they infringe. They defend the suit, first, on the ground that part of the evidence taken for the complainants should not be read, because it was taken in Washington, in the District of Columbia, and they allege that the sixty-seventh equity rule and sections 863 and 864 of the Revised Statutes do not authorize the taking of testimony at any place outside the circuit in which the action is pending. The respondents have filed no brief, and they have not argued this point further than to state it as above recited. I have examined the rule and the statute, and am unable to see anything therein which can so limit the right to take testimony; and I am therefore constrained to hold, for the purposes of this case, that the testimony may be read.

The respondents further contend that the patent shows no patentable invention, in view of the methods long in use in the preparation of medicinal plasters. It appears that as early as 1849 the following directions were given for the preparation of such plasters:

"If the material of which the plaster is composed be sufficiently adhesive to insure its remaining fixed to the part of the body to which it is applied, it is spread, without any previous preparation of the leather, to within about half an inch of the edge, leaving a margin of this width of uncovered leather; but plasters possessing little or no adhesiveness ought to be surrounded by an adhesive margin, and in such case the margin must be prepared before spreading the plaster. There are two methods of preparing the adhesive margin: The adhesive plaster may be either spread entirely over the leather, to the very edge, or it may be merely applied around the edge of the leather, so as to form a border of about an inch in width."

It does not seem to me that plasters so prepared would suggest the device of Thum, or that fly paper prepared according to these directions would answer the purpose of the patented article. Margins or borders, of course, are old; but they serve many functions, and it must be held to be similarity of function, no less than similarity of form, which constitutes a double use. The adhesive margin of the

plaster has no effect to confine the substance of the plaster. If the adhesive substance be "spread entirely over the leather," it is evident that no such result follows; and, even if it be "merely applied around the edge of the leather," the descriptions do not suggest that they should be of sufficient thickness to confine the plaster. In short, the margin of the plaster was intended and adapted to fasten the plaster to the surface of the body, and not in any degree to confine or retain the medicinal substance of the plaster. Such a border does not suggest the border here patented.

The respondents further contend that sticky fly paper precisely similar to that described in the patent was made and sold by William P. Clough and John W. F. Willson, and was sold by Merrill S. Noyes more than two years before either of these patents was issued or applied for; and they support this allegation by the testimony of several witnesses. But the witnesses testify loosely, and entirely from recollection, and notably do not produce any samples of the article said to have been sold, but identify it only by their description. The witnesses Clough and Willson testify that they sold the fly paper such as is described in the patent to certain wholesale druggists in Boston, whom they name. But competent representatives of all but one of these houses entirely contradict this statement. One of these druggists, Mr. Albert C. Smith, does, indeed, testify, when first questioned, that he bought the article in question from Willson in the year 1878, but on further reflection he so modifies his testimony that it is not possible to infer from it that the sale took place earlier than the year 1884. The evidence in support of this last contention of the respondents is thus very far from that which is required to support such a claim. I therefore conclude that the complainants are entitled to a decree.